UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TOBBY BLACKWOOD, et al., | ) | CASE NO. 1:07CV1624 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | |
| UNITED TRANSPORTATION UNION, et al., | ) ) | |
| | ) | |
| DEFENDANTS. | ) | |

This case is brought pursuant to the Railway Labor Act, 45 U.S.C. § 151, *et seq.*[1] Before the Court are motions for summary judgment filed by Defendant CSX Transportation, Inc. ("CSXT") (Doc. No. 35) Defendant United Transportation Union ("UTU") (Doc. No. 36). The only remaining Plaintiff, Roc Young ("Young"),[2] filed a single response (Doc. No. 40) and each Defendant filed a reply (Doc. Nos. 41, 42). For the reasons discussed below, both motions are **GRANTED**.

---

[1] *See* Amended Complaint (hereafter "Complaint) (Doc. No. 19.)

[2] All parties represent that Plaintiffs Tobby Blackwood, Don W. Smith and Daniel Chastain have settled with the Defendants. However, there has been no proposed judgment entry submitted to the Court for its approval. Upon the representations made, the Court will issue its own entry regarding these three Plaintiffs.

# I.

## FACTUAL BACKGROUND

Plaintiff Young is employed as a train service employee by CSXT. His employment is governed by the terms of a collective bargaining agreement ("CBA") between CSXT and UTU. This CBA requires that Young belong to either UTU or the Brotherhood of Locomotive Engineers and Trainmen ("BLET") as a condition of his employment.[3] Young initially joined UTU; after about eight months of employment, he joined the BLET and has remained a member at all relevant times. (Young Dep. at 10-11.)

In November 2004, UTU and the National Railway Labor Conference ("NLRC"), the bargaining agent for the nation's railroads, entered into a Letter of Intent ("LOI") pertaining to the maintenance of seniority for train service employees between November 1, 2004 and March 1, 2007. A copy of the LOI is attached to CSXT's motion as Exhibit 2. (Doc. No. 35-4.) Under the LOI, train service employees who wished to continue to accrue seniority were required to either join UTU and pay union dues or pay a monthly UTU service maintenance fee ("SM fee").[4] Each UTU General

---

[3] Under the RLA, railroad employees are classified by their crafts for purposes of collective bargaining. *See* 45 U.S.C. § 152, Fourth ("The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter.") The Complaint alleges that BLET is the exclusive bargaining representative of CSXT employees in the locomotive engineers craft or class (Compl. ¶ 2), even though it does have trainmen among its members. The UTU is the exclusive bargaining representative of CSXT employees in the train service craft, *i.e.*, trainmen, conductors and switchmen (Compl. ¶ 3), even if the employees are not members of UTU. Under 45 U.S.C. § 152, Eleventh (c), employees in train or engine service may satisfy a CBA's requirement that they maintain membership in a labor organization "if said employee shall hold or acquire membership in any one of the labor organizations, national in scope, organized in accordance with this chapter and admitting to membership employees of a craft or class in any of said services[,]" which would included BLET or UTU. Plaintiff is a member of BLET; but it is agreed that his employment is governed by the CBA between UTU and CSXT because he is a member of the train service craft, even though not a member of UTU.

[4] The LOI explained the reason for this as follows:
> [. . .] As the lawfully designated collective bargaining representative of a craft under the Railway Labor Act, the UTU must represent every employee working (or holding seniority) in the craft with respect to contract bargaining/administration and

Committee of Adjustment ("GCA") was permitted to decide whether to implement the LOI at locations within its own jurisdiction. (LOI at Sec. 6.) Once the LOI was implemented at a location, UTU had the right to instruct CSXT to freeze an employee's seniority if the employee failed to pay either union dues or the SM fee. (LOI at Sec. 2(b).)

Effective December 1, 2004, the relevant GCA elected to implement the LOI at the Birmingham, Alabama location where Plaintiff was based, as indicated in a November 4, 2004 letter from General Chairman Rufus McIntyre ("McIntyre")[5] to CSXT Director of Labor Relations Steven Friedman ("Friedman".) (Doc. No. 35-6.) Affected train service employees, including Plaintiff, received a notice from UTU Local 847 Secretary and Treasurer R.B. Pope.[6] This notice explained the employees' obligations under the LOI and advised them that their seniority would be frozen if they failed to comply with their obligations. (Doc. No. 35-8.)[7]

---

claim and grievance handling, including non-members. In recent meetings, the UTU has advanced specific proposals that, consistent with applicable legal authority, would amend certain existing agreements governing train service seniority to ensure that the organization would receive financial support from all employees whose seniority rights and interests it is required by law to represent. After considerable discussion, the parties have reached this Letter of Intent, which may be implemented as provided in Paragraph 6 below.

(Doc. No. 35-4, at 1.)

[5] On February 1, 2007 Hogan became the General Chairman (Hogan Decl. ¶ 2), replacing McIntyre who retired on January 31, 2007.

[6] Pope is now deceased.

[7] The notice also stated: "If you choose to pay the seniority maintenance fee to comply with the Agreement, you will be a non-member and will have no rights of membership, such as voting on agreements, participating in elections, or attending local meetings." (Doc. No. 35-8, at 2.)

Plaintiff Young decided to pay the SM fee and made his first payment in January 2005. He continued paying until the LOI was cancelled in March 2007. (Young Dep. at 14-15.) However, due to a bookkeeping error by UTU, Young's April 2005 payment was apparently not recorded. On March 4, 2005, McIntyre wrote to Friedman instructing him to freeze Young's seniority effective April 1, 2005 for alleged non-payment of the SM fee. (Pltf. Exh. 5.)[8] Although new seniority lists are updated and posted annually in January,[9] Young claims he did not know that his seniority had been frozen until June 2007, when he saw a seniority list with his date listed as June 17, 2003 rather than May 18, 2003. (Young Decl. ¶ 3.) It is undisputed that, although the LOI requires notice by certified mail before an employee's seniority is frozen,[10] no such certified mail notice was sent to Young.

In June 2007, in order to determine why his seniority had been frozen, Young contacted General Chairman Barry Hogan ("Hogan"),[11] who told Young that payment of his April 2005 SM fee had not been received. (Young Dep. at 17, 20.) Young then collected copies of the cancelled checks for his March, April and May 2005 SM fee payments and sent them to Hogan in a

---

[8] This exhibit is located at Doc. No. 40-3 at 14-15.

[9] Friedman and McIntyre disagreed over when seniority rosters should be amended to reflect freeze changes. McIntyre wanted it done immediately upon his request; Friedman would only do it when a new roster was published each January. (Friedman Dep. at 110-11; McIntyre Dep. at 65-66.)

[10] The LOI provides, in relevant part, that when the seniority maintenance fee has not been paid, the employee shall be promptly notified of that non-payment by the UTU by certified mail. If such default has not been cured within thirty (30) calendar days after the date of such notice, the UTU shall provide the carrier written notification of the non-payment and that individual's seniority in the train service class/craft involved shall be frozen effective on the first calendar day after expiration of the 30-day notice period.
(Doc. No. 35-4, Sec. 2(b).)

[11] *See* note 5, *supra*.

4

letter dated June 22, 2007. (Doc. No. 35-33.) On July 19, 2007, Hogan sent a letter to Myron Becker ("Becker"), CSXT's Director of Labor Relations, instructing him to restore Young's seniority date to May 18, 2003.[12] (Doc. No. 35-34.) The seniority was restored on September 10, 2007. (Young Dep. at 25-26.)[13] Young joined this lawsuit by way of the Amended Complaint on October 15, 2007. (Doc. No. 19.)

## II.

## DISCUSSION

### A.  Standard for Summary Judgment

Under Fed. R. Civ. P. 56(c), summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

### B.  Analysis in Light of Applicable Law

The original Complaint in this action was filed on June 1, 2007, by two now-dismissed plaintiffs.[14] The original Complaint asserted that the action arose under the Railway Labor Act, 45 U.S.C. §§ 151, *et seq*., and the Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202. It

---

[12] A tie-breaking method resulted in Young being number 8 of the 11 employees with the same hire date. (Friedman Dep. at 29-30.)

[13] It is not quite clear exactly when and for how long Young's seniority was frozen. At his deposition, Young testified that his seniority was frozen for 28 months. (Young Dep. at 35.) Presumably he was counting from April 1, 2005, the purported effective date of the freeze, until September 2007, the date his seniority was restored. In the declaration filed with his opposition to the motions for summary judgment, Young concedes that his seniority date was simply changed by 30 days, from May 18, 2003 to June 17, 2003, and the roster reflecting this change was not published until January 2007. Therefore, since his seniority was subsequently restored to its original date in September 2007, he concedes that he suffered loss of one month's seniority for only a period of nine months. (Young Decl. ¶ 3.)

asserted jurisdiction under 28 U.S.C. §§ 1331, 1337 and 2201. On October 15, 2007, Plaintiffs amended their Complaint and added two additional Plaintiffs, Daniel Chastain, who is now dismissed, and Roc Young, the only remaining Plaintiff.

The Railway Labor Act "impose[s] on the bargaining representative of a craft or class of employees the duty to exercise fairly the power conferred upon it in behalf of all those for whom it acts, without hostile discrimination against them." *Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192, 202-03 (1944). "A breach of the statutory duty of fair representation ["DFR"] occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967).[15] "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' [. . . ] as to be irrational." *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67 (1991) (quoting *Ford Motor Company v. Huffman*, 345 U.S. 330, 338 (1953)). Mere negligence is not actionable. *United Steelworkers of America v. Rawson*, 495 U.S. 362, 372-73 (1990); *Poole v. Budd Co.*, 706 F.2d 181, 183 (6th Cir. 1983). However, recklessness or gross negligence by the union may be enough to establish that the union acted arbitrarily. *Linton v. United Parcel Service*, 15 F.3d 1365, 1372 (6th Cir. 1994). A plaintiff must provide "substantial evidence of fraud, deceitful action or dishonest conduct" to establish that a Union acted in bad faith. *Amalgamated Ass'n of Street, Electric Railway and Motor Coach*

---

[14] The original plaintiffs were Tobby Blackwood and Don W. Smith. *See* Doc. No. 1.

[15] An employee can be a member of a bargaining unit on whose behalf a union negotiates a CBA without also being a member of the union. *See,* 45 U.S.C. § 152, Eleventh (a) and (c).That is exactly the situation in the instant case, where Young is a member of the bargaining unit but not a member of UTU. The DFR arises from UTU's representation of Young as a member of the bargaining unit.

*Employees of America v. Lockridge*, 403 U.S. 274, 299 (1971). Discrimination or bad faith must be so egregious as to be "invidious." *O'Neill*, 499 U.S. at 81.

Young takes the position in the Amended Complaint that, by freezing his seniority, UTU breached its DFR and CSXT participated in that breach. He asserts that the wrongful change in his seniority caused him to lose advantages that accompany the exercise of his seniority rights, such as higher-paying or more favorable jobs that are awarded by seniority. He seeks to be made whole for the monetary losses he incurred.[16]

As a threshold matter, the Court notes that DFR attaches to the *union*, not the employer. It arises out of the union's status as an exclusive bargaining representative and its concomitant right to enforce the resulting bargaining agreement. *See, e.g.*, *Rawson*, 495 U.S. at 373 (DFR "is thus a matter of status rather than contract"). Therefore, there is no viable claim against an employer for breach of DFR. This entitles CSXT to summary judgment on Young's sole claim of breach of DFR. Therefore, Doc. No. 35 is **GRANTED** and CSXT is dismissed from the case.

As noted above, establishing a breach of DFR requires a showing of arbitrary, discriminatory or bad faith action on the part of the union. In this case, the record fails to establish that level of behavior.

---

[16] The Amended Complaint does not challenge the LOI or the procedures used to enforce the LOI. In particular, it makes no mention of the fact that Young never received notice by certified mail, nor an opportunity to cure, prior to having his seniority frozen for alleged failure to pay his maintenance fee for April 2005. It is only in his opposition to the motions for summary judgment that Young asserts that "UTU's actions here were taken with no regard for the requirements of the CBA." (Opposition, at 9.) This seems to add a layer of argument that is not found in the Amended Complaint, namely, that there was a breach of the CBA, as amended by the LOI, not only a breach of the DFR. If Plaintiff were making such a claim, it would likely not survive because he neither exhausted available contractual remedies nor brought his claim in a timely fashion, *i.e.*, within six months of when he knew or should have known of the alleged breach. *West v. Conrail*, 481 U.S. 35, 37-38 and n. 2 (1987) (citing *DelCostello v. Teamsters*, 462 U.S. 151 (1983)); *Robinson v. Central Brass Mfg. Co.*, 987 F.2d 1235, 1239 (6th Cir. 1993), *cert. denied*, 510 U.S. 827 (1993).

UTU's Treasurer, R.B. Pope, was responsible for receiving and recording the union dues and maintenance fees. It is undisputed that he was not an accountant, but worked full-time as a conductor and kept track of payments by 350 union members in his spare time. (Hogan Decl. at ¶¶ 4-5.)

Young himself has admitted that he had no reason to believe that Pope improperly withheld his payment check or had any vendetta against him. In fact, Young did not even know Pope. (Young Dep. at 22-23.) Likewise, Young did not know General Chairman Hogan and had no reason to believe he had a vendetta against him. (Young Dep. at 23.) In fact, as soon as Plaintiff provided Hogan with evidence of an error with respect to his payments, Hogan restored his seniority. Young readily admitted that he has no evidence of any arbitrary, discriminatory, or bad faith conduct, and has no reason to believe what happened was anything but a mistake. (Young Dep. at 46-47.)

Under these circumstances, Young fails to establish that there was a breach by UTU of its duty to fairly represent. Therefore, UTU is entitled to summary judgment and the same shall be granted.

## III.

## CONCLUSION

For the reasons discussed above, the motions for summary judgment filed by Defendants (Doc. Nos. 35 and 36) are both **GRANTED** as to Plaintiff Roc Young.

Upon the representation of counsel that Plaintiffs Tobby Blackwood, Don W. Smith, and Daniel Chastain have settled with Defendants, the motions are **DENIED AS MOOT** with respect to those three Plaintiffs.

Case dismissed.

**IT IS SO ORDERED**.

Dated: April 29, 2008

                                            **HONORABLE SARA LIOI**
                                            **UNITED STATES DISTRICT JUDGE**